Stenberg v. Missouri P. R. Co.

JOHN STENBERG, APPELLEE, V. MISSOURI PACIFIC RAILWAY
COMPANY, APPELLANT.

FILED MARCH 13, 1914.   No. 17,623.

1. **Carriers**: LIABILITY: ASSAULT ON TRESPASSER. Evidence that a
   brakeman on a freight train demanded money of a trespasser in
   one of the cars of the train, and immediately struck him, with
   some deadly weapon, such a blow as to crush his skull and render
   him unconscious for several weeks, will not justify a finding that
   such act was done in the employment of the company, and render
   the company liable in damages.

2. ———: ———: ———: EVIDENCE. The evidence indicated in the
   opinion is *held* insufficient to support a judgment against the
   defendant.

APPEAL from the district court for Douglas county:
LEE S. ESTELLE, JUDGE. *Reversed.*

*Edgar M. Morsman, Jr.,* and *J. A. C. Kennedy,* for ap-
pellant.

*W. W. Slabaugh, John W. Battin* and *Charles E. Fos-
ter, contra.*

SEDGWICK, J.

In the spring of 1911 the plaintiff was employed in a
stone quarry near Nehawka. He went to Omaha for the
purpose, he says, of having a rest and enjoying himself.
He had $40 in his pocket, and, after staying around the
city at various places for five or six days, he went on the
9th day of June to a saloon and drank some beer : (one
glass he says), and borrowed $2 from the saloon-keeper
with which to go home, and then between 2 and 3 o'clock
in the afternoon started for the Webster street railroad
station, about 10 blocks distant. The defendant's passen-
ger train which he desired to take left that station at
3:50, and the plaintiff arrived there too late to take that
train. He says he stopped and talked with an acquain-
tance on the way. He then took a street car to South

95 Neb. 36

Omaha, and he testified that between 5 and 6 o'clock he went to the track of the defendant, and found a freight train there, and told a man, whom he said was the conductor, where he wanted to go, and was asked if he had any money, and said he would give him 50 cents to let him ride. He then got into an empty box car and sat down in the corner of the car. The car left in about 20 minutes, and after it had passed Plattsmouth a man entered the window at the end of the car and approached the plaintiff, and asked him if he had any money. The plaintiff told him that he had paid 50 cents for his ride, and the man then struck him on the top of the head with some instrument, which the plaintiff thinks he carried in his pocket, and from that time the plaintiff was unconscious for something more than 30 days. He alleges that the man who struck him was a brakeman and employed by the defendant company. He brought this action in the district court for Douglas county to recover damages caused by this injury. The trial resulted in a verdict and judgment in favor of the plaintiff, and the defendant has appealed.

The principal contentions of the defendant are that the verdict and judgment are not supported by the evidence, and that the plaintiff's own evidence shows that the man who assaulted him was not in the line of his duty as an employee of the defendant company at the time, and the defendant was not responsible for his act.

1. The plaintiff is fully corroborated as to the extent of his injury. The evidence of the physician who attended him was that the blow was such a severe one as to break the plaintiff's skull and cause him to be unconscious for several weeks. "The skull was fractured in such a way that a portion of the bone was driven in, and there was brain tissue at that time escaping through the opening." The plaintiff suffered other injuries. The plaintiff is also corroborated as to his having been to the saloon, and that he borrowed $2 of the saloon-keeper with which to go home at about the time that he testified he did. It also appears from the evidence that the crew of one of defendant's

freight trains found the plaintiff lying in an unconscious condition on the railroad track of the defendant south of Plattsmouth, and between the stations of Murray and Union, at about 5:50 o'clock of the morning of June 10. They "smelled liquor on him" when they moved him. We have not found that the plaintiff's story is corroborated in any other particular. The evidence was without contradiction that there was no freight train of the defendant that left South Omaha going south later than 2 o'clock in the afternoon until 8:20 in the evening. As the plaintiff could not have arrived in South Omaha before 2 o'clock, if he rode on any train of the defendant it must have been the train that left South Omaha at 8:20 P. M. It appears that the freight trains of the defendant run from the Webster street station in Omaha over the belt line to the junction with the Union Pacific and stock-yards tracks, and from that point over the Union Pacific track through South Omaha and to California Junction, and the trains of the Burlington also run over the same line. The freight train of the defendant which left South Omaha at 8:20 on that day was a through train. Its crew consisted of a conductor and two brakemen, all of whom were witnesses on the trial. The conductor testified positively that he was required to and did make a record of the cars in his train on that day, and that there were no empty cars in the train, and that he never saw the plaintiff before the trial, and the plaintiff did not ride upon the train that day. Both of the brakemen positively denied that they had ever seen the plaintiff before the trial, or that on the day named they went into any empty car on that train, or that there was any person on the train other than the employees, or that either of them assaulted any person on that train. The theory of the plaintiff is that when he was assaulted on the train he was afterwards thrown from the car by the person who assaulted him. When he was found on the track in an unconscious condition several hours after the train on which he says he was riding had passed, he was lying between the rails of the track, and there is of

course no explanation as to how he could have fallen in such a situation. The train dispatcher of the company was also a witness, and corroborated the conductor as to there being no empty cars upon the train in question. There are other circumstances shown in the testimony that tend to show the impossibility of the plaintiff's story. If he had not been drinking in Omaha more than he says he had, and was in any condition to take care of himself or know what he was really doing, and if he is not mistaken in regard to having taken one of the defendant's trains, instead of another of the various trains that might be in the same locality in the South Omaha yards, still his evidence is so indefinite and improbable in itself that it fails to support a judgment against the defendant, contradicted as it is by the evidence of so many apparently reliable witnesses and so many well-established circumstances.

2. The evidence wholly fails to show that the defendant was assaulted and injured by an employee of the defendant company in the course of his employment. According to the plaintiff's testimony, the purpose of his assailant was robbery, and the robber, without anything further than to ask him how much money he had, dealt him such a blow on the top of his head as to crush his skull to such extent that the substance of the brain was exposed. If he received his injury in such a manner, the object of his assailant must have been murder and robbery, and he at once threw from the train what he supposed was the corpse of his victim. The trial court instructed the jury that under the evidence the plaintiff, if he was in the car of the defendant, was a trespasser. This is in accordance with the evidence, and, that being the case, the defendant as a common carrier was not an insurer against robbery and murder.

The judgment of the district court is reversed and the cause remanded.

REVERSED.

LETTON, ROSE and HAMER, JJ., not sitting.